**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Rocket Aerohead Corporation,** **Civil No. 01-333 (DSD/SRN)**

**Plaintiff,**

**v.**

**REPORT AND RECOMMENDATION**

**Victor Jay Liechty, II,**

**Defendant.**

---

Alfred H. Edwall, Esq. and Ricardo Figueroa, Esq., on behalf of Plaintiff.

Michael P. North, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on August 28, 2001 on Defendants's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. No. 5). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendant's Motion to Dismiss be denied.

## I. DEFENDANT'S MOTION TO DISMISS.

### A. Factual Background.

Plaintiff has brought a declaratory judgment action seeking declaration of non-infringement and invalidity of Defendant's patent, and Plaintiff has also brought a claim for an injunction and damages from Defendant's alleged false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and Minn. Stat. § 325D.44.

FILED OCT 0 5 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Plaintiff is a Minnesota corporation involved in the manufacture and sale of mechanical arrowheads (broadheads). (Compl. ¶ 7.) Defendant is the sole proprietor of Grim Reaper Broadheads (Grim Reaper) a business which manufactures and sells broadheads. (Affidavit of Victor Jay Liechty (Liechty Aff.) ¶¶ 1-3.) Grim Reaper has no employees other than Defendant. (Liechty Aff. ¶ 4.) Defendant is a citizen of Utah, and operates Grim Reaper out of his home in Provo, Utah. (Liechty Aff. ¶¶ 2-3.) Grim Reaper is only licensed to do business in Utah. Id.

From March 10-12, 2000, Defendant attended the Minnesota Deer Classic Trade Show and displayed his broadheads there. (Liechty Aff. ¶ 5.) At the trade show, a Minnesota retailer placed an order and paid Defendant $150. (Affidavit of Ricardo Figueroa (Figueroa Aff.) Ex.1.) During the show, Defendant also made comparisons between his and Plaintiff's broadheads. (Compl. ¶ 20.) Plaintiff believed these comparisons misrepresented his products. Id. Consequently, he instructed Defendant to cease making the comparison, and Defendant complied with this instruction.

Shortly after the trade show was completed, Archery Experts Compound Doctor (Compound Doctor), a retail store located in White Bear Lake, Minnesota, received several customer inquiries concerning Defendant's products. (Affidavit of Dan Krueger (Krueger Aff.) ¶ 4.) Consequently, Compound Doctor placed an order with Defendant, and in May, 2000, Defendant shipped twelve packages of broadheads to Compound Doctor at a cost of approximately $25.00 each. Id. Because these broadheads were not fully assembled, they were returned to Defendant before payment was ever made. (Krueger Aff. ¶ 6 and Figueroa Aff. Ex.1.) In February, 2001, Compound Doctor again attempted to order arrowheads from Defendant, but Defendant returned none of Compound Doctor's phone calls, and so no order was

placed. (Krueger Aff. ¶ 7.) In March, 2001, Compound Doctor successfully made contact with Defendant, and requested and received one package of broadheads. (Krueger Aff. ¶ 8.) Because this package was only used as a prototype, Compound Doctor did not pay Defendant for it.

Defendant maintains an internet website for advertising Grim Reaper products. (Figueroa Aff. Ex. 4.) This website includes an email address, toll-free telephone number, and fax number for corresponding with Defendant and ordering products. Id. After failing to make contact with Defendant in February, 2001 Compound Doctor accessed the Grim Reaper website looking for additional contact information. (Krueger Aff. ¶ 7.) The website was temporarily under construction, but it stated that it would soon be up and running so that telephone and email orders could be taken by Grim Reaper for its products. Id. Grim Reaper's website directory has been included in three different written publications dealing with archery and bow hunting, which are distributed in Minnesota. (Figueroa Aff. Ex.1, and Ex. 5.) In 2000, Grim Reaper also sponsored and advertised on a nationally televised cable television program called "Gone Huntin' with Tony & Keith." (Figueroa Aff. Ex. 3.)

On or about January 22, 2001, Defendant wrote to Plaintiff contending that certain of Plaintiff's broadheads infringed United States Patent No. 6,171,206 (the '206 patent) held by Defendant. (Compl. ¶ 8.) In this letter, Defendant proposed a licensing agreement that provided for the following conditions, (1) "a one-time up front nonrefundable payment of $25,000", (2) "a royalty payment of 7% based on gross sale of products, (3) a minimum annual royalty payment of $25,000, and (4) "Grim Reaper Broadheads will retain rights to manufacture, use, sell, and import product under the '206 patent." (Figueroa Aff. Ex. 2.)

Plaintiff brought the present suit on February 21, 2001. Defendant brought the instant

Motion to Dismiss on March 16, 2001. In opposing Defendant's motion, Plaintiff urges this Court to find jurisdiction proper under the specific personal jurisdiction rationale, and makes no argument that jurisdiction would be proper under the broader general personal jurisdiction framework. Because Plaintiff makes no argument for general personal jurisdiction, and because a finding that specific personal jurisdiction exists will adequately dispose of Defendant's Motion, the following discussion will be dedicated exclusively to an examination of specific personal jurisdiction.

**B. Discussion.**

**1. Choice of Law and Legal Standard.**

"To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 521 (8th Cir. 1996). In determining whether a prima facie showing has been made, the Court must view the evidence in the light most favorable to the plaintiff. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." 3D Systems, Inc. v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Hence, "an assessment of personal jurisdiction involves two inquiries: (1) whether the applicable state long-arm statute, Minnesota Statute § 543.19, is satisfied, and (2) whether this Court's exercise of jurisdiction is consistent with the requisites of due process." Multi-Tech Systems, Inc. v. Vocaltec Communications, Inc., 122 F.Supp.2d 1046, 1049 (D. Minn. 2000) citing 3D Systems 160 F.3d 1373. "Minnesota has consistently held that its legislature intended

the long-arm statue to have the maximum extraterritorial effect allowed under the Fourteenth Amendment." Minnesota Mining & Mfg. Co. v. Nippon Carbide Industries Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995). Therefore, the discussion to follow must focus on whether exercising personal jurisdiction over Defendant comports with federal due process. See id.

In patent cases, the Court applies the law of the Federal Circuit rather than that of the regional circuit in which the case arose. See Multi-Tech Systems, 122 F.Supp.2d at1049; Akro Corp. v. Luker, 45 F.3d 1541, 1543, 33 U.S.P.Q.2d 1505, 1507 (Fed. Cir. 1995); Beverly Hills Fan Co. v. Royal Sovereign Corp. 21 F.3d 1558, 1564, 30 U.S.P.Q.2d 1001, 1006 (Fed. Cir. 1994), cert. dismissed, 512 U.S. 1273 (1994). "The jurisdictional issue presented by an out-of-state patentee is no less intimately involved with the substance of the patent laws than that of an out-of-state accused infringer." Akro, 45 F.3d at 1543. Consequently, the issue of personal jurisdiction "presents a question of Federal Circuit Law." Id.

In determining whether exertion of personal jurisdiction is consistent with due process, the Federal Circuit, like the Eighth Circuit, applies the "minimum contacts" standard of International Shoe and its progeny. See Beverly Hills Fan 21 F.3d at 1565-69. Under this standard, a court may exert personal jurisdiction over an out-of-state defendant if, (1) the defendant purposefully directed activities at residents of the forum state, (2) "the litigation results from alleged injuries that arise out of or relate to those activities", and (3) given the satisfaction of the first two elements, exercising personal jurisdiction would comport with fair play and substantial justice. See Akro 45 F.3d at 1545-6 citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-7 (1985).

### 2. Websites as basis for personal jurisdiction.

While a great deal of business is now routinely conducted via the Internet, the Federal Circuit has not yet addressed the specific issue of internet websites as a basis for exerting personal jurisdiction. Consequently, the Court will look to other federal precedent for guidance. In the initial cases, some federal courts found that a website alone, without further interaction between a defendant and state residents could support jurisdiction. See Inset Systems, Inc. v. Instruction Set, 937 F.Supp. 161 (D. Conn. 1996). In Inset, the court held that a defendant's website along with a toll-free phone number were sufficient minimum contacts to support personal jurisdiction, because "unlike television and radio advertising, the advertisement is available continuously to any Internet user." Id. at 165. Subsequent federal cases questioned the rationale of Inset Systems. See Rannoch, Inc. v. Rannoch Corp., 52 F. Supp.2d 681 (E.D. Va, 1999) (finding that a website by itself, even one that is somewhat interactive, can not support personal jurisdiction without producing the absurd result that the website would then subject its creator to personal jurisdiction everywhere in the country); see also Bensusan Restaurant Corp. v. King, 937 F.Supp. 295 (S.D. N.Y. 1996) (finding that a website alone is too similar to simply placing a product into the stream of commerce, and without more does not constitute an act purposefully directed toward the forum state).

In response, many federal courts now apply some variation of the sliding scale test put forward in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D. Pa. 1997). On this sliding scale, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 1124. Specifically, the nature and quality of the commercial activity

conducted on the Internet, determine whether a defendant purposefully availed himself of the benefits and protection of the law of the forum state. See Multi-Tech, 122 F.Supp.2d at 1050.

At one end of the sliding scale are websites on which a defendant clearly does business over the Internet, such as entering into contracts, and therefore personal jurisdiction is proper. See Zippo 952 F.Supp. at 1124 citing CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996). At the opposite end are "passive" websites, where a defendant has simply posted information, and personal jurisdiction is not proper. See id. citing Bensusan 937 F.Supp. at 295. The middle ground contains websites on which a user can exchange some information with the host computer. In these cases, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id. citing Maritz, Inc. v. Cybergold, inc. , 947 F.Supp. 1328 (E.D. Mo. 1996).

While Zippo has been widely adopted, certain federal courts have remained cautious, concerned not to allow jurisdiction based on websites to erode the traditional due process protections owed to out-of-state defendants. As one court stressed, "[u]ntil the advertiser is actually faced with and makes the choice to dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposely directed its activities at residents of the forum state." Digital Control, Inc. v. Boretronics, Inc., WL 1090263 citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998).

Courts proceeding with this more cautious approach have generally evaluated defendants' purposeful activities by considering their activities conducted over the Internet together with any additional significant contacts. Compare Multi-Tech Systems, 122 F.Supp.2d 1046 (personal

jurisdiction existed where defendant's product was purchased in a Minnesota store, over a commercial website, and defendant's own website allowed customers to download software directly) and Vitullo v. Velocity Power Boats, Inc., 1998 WL 246152 (N.D. Ill. 1998) (personal jurisdiction existed where defendant's website allowed users to contact defendant by email and solicited Illinois residents to attend the Chicago Boat Show and view defendant's powerboats, and defendant also sold products to a Michigan dealer who also displayed them at the Chicago Boat Show) with Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc., 2001 WL 1041990 (S.D. N.Y. 2001) (personal jurisdiction did not exist because while defendant operated a highly interactive website, there were no actual sales made). Hence, while the presence of a website is significant, the mere possibility of making sales is an insufficient basis for exerting personal jurisdiction.

**A. Purposeful Direction.**

Plaintiff asserts that Defendant's contacts with the state of Minnesota are clearly evidence of purposeful commercial activity sufficient to meet the "minimum contacts" requirement for personal jurisdiction. While Plaintiff concedes that Defendant's contacts are not extensive, he contends that they are nevertheless purposeful and continuing efforts to promote commercial activity. Plaintiff emphasizes that Defendant himself actually came to Minnesota to sell and promote his products. Further, Plaintiff states as significant that Defendant committed the alleged false advertising while he was in Minnesota. Plaintiff contends that Defendant's subsequent contacts with Compound Doctor are evidence of Defendant's continuing efforts to exploit the Minnesota archery market. Moreover, Plaintiff notes that under Papachristou v. Turbines, Inc., 902 F.2d 685, 686 (8th Cir. 1990), the Court held that one attempted sale was a

sufficient contact for purposes of personal jurisdiction, even though the sale was not completed. Hence, Plaintiff argues that Defendant's exchanges with Compound Doctor are significant, and it is irrelevant that Compound Doctor eventually returned Defendant's broadheads. Plaintiff also believes that Defendant's patent letter to Plaintiff was further contact relating to Defendant's earlier presence in Minnesota.

Plaintiff also cites Defendant's advertisements in publications distributed in Minnesota, and on a nationally broadcast televison program as additional evidence of Defendant's attempt to exploit the Minnesota archery market, and to benefit from doing business in the state. Plaintiff claims that Defendant includes an email address and toll-free number on his website in an effort to solicit business from potential customers. To emphasize this point, Plaintiff notes that Compound Doctor used this website at least once to obtain Defendant's phone number and make contact with him. Hence, Plaintiff concludes that Defendant's website is much more than a passive advertisement with no specific connection to Minnesota.

In summary, Plaintiff explains that while some of these contacts may not be sufficient by themselves, all of them taken together are clear evidence that Defendant purposefully directed his activities at Minnesota.

Defendant contends that his contacts with Minnesota are inadequate to support the Court's exertion of personal jurisdiction over him. With respect to the patent claims, Defendant states that his only relevant contact with Minnesota was his January 2001 patent letter to Plaintiff. Defendant argues that there is nothing about this letter to suggest that Defendant was purposefully availing himself of any benefit or protection of Minnesota law. Therefore, Defendant concludes that personal jurisdiction does not exist in this context.

With respect to the false advertising claim, Defendant concedes that under Papachristou, one purposeful contact with the forum state can support the exercise of purposeful jurisdiction. Defendant, however, states that his presence at the 2000 Minnesota Deer Classic Trade Show was his only relevant contact with Minnesota. He stresses that the he discontinued the alleged false comparison upon Plaintiff's request, and that the comparison was never placed in printed advertisements or other permanent form. In addition, Defendant notes that his total revenue from the trade show was only $150. Based on these facts, Defendant maintains that his contact with Minnesota was too limited and insubstantial to support the Court's exertion of personal jurisdiction over him.

Addressing his website, Defendant explains that customers can not provide information about themselves, and it is impossible for them to order product directly from the website. Consequently, Defendant states that his website is passive and can not serve as the basis for exercising personal jurisdiction over him. Thus, Defendant concludes that personal jurisdiction does not exist for any of the claims at issue in this case.

The Court finds that Defendant has purposefully directed his activities at residents of Minnesota. Most significantly, Defendant came to Minnesota, marketed his products in this state, and made sales here. The broadheads purchased by Minnesota residents did not end up in Minnesota as a result of a series of transactions over which Defendant had no control. Rather, he directed them here himself. Even under the narrow stream of commerce theory endorsed by Justice O'Connor's plurality opinion in Asahi Metal Industry Co. v. Superior Court of California,

480 U.S. 102, 107 (1987),[1] this contact alone might be sufficient to subject Defendant to personal jurisdiction.

Moreover, since attending the trade show, Defendant has continued to attempt to exploit the archery market in Minnesota. While Defendant is correct to state that the Grim Reaper website can not support the exercise of personal jurisdiction by itself, it is nevertheless a significant factor when considered together with the additional contact it produced. The owner of Compound Doctor stated that the Grim Reaper website facilitated his renewed contact with Defendant, during which he ordered a case of Defendant's broadheads. Given that Compound Doctor is a retailer who had previously attempted to order products for his customers, the Grim Reaper website clearly allowed Defendant to renew commercial activity with a Minnesota resident. Hence, under the most recent cases applying the Zippo sliding scale, the Grim Reaper website should be considered as one of the contacts on which the Court could base personal jurisdiction. Finally, Defendant's additional advertisements in written publications and on television allowed him to communicate with Minnesota residents in the hopes of selling his products in Minnesota.

Given that Defendant came to Minnesota and sold his products here, maintained a continued commercial relationship with a Minnesota retailer by phone, which was facilitated by a website designed to solicit business, and advertised in national media that were broadcast and

---

[1]Under this theory, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." 480 U.S. at 112.

distributed in Minnesota, the Court concludes that Defendant purposefully directed activities at residents of this State.

### B. <u>The litigation arises out of or relates to those activities.</u>

Plaintiff states that the present claims are directly related to Defendant's contacts with Minnesota. With regard to the alleged false advertising, Defendant states that this claim is clearly related to Defendant's behavior in the state, because the claim is entirely based on the display and comparison Defendant performed at the Minnesota trade show. With regard to the patent claims, Plaintiff states first that these claims are directly related to the patent letter that Defendant sent to Plaintiff in 2001. Additionally, Plaintiff states that because Defendant is attempting to market his products in Minnesota, and to enforce his own patent here, Plaintiff brought this declaratory judgment claim out of concern that these activities would limit his ability to market his own products in Minnesota. Hence, Plaintiff concludes that the patent claim also directly relates to Defendant's contacts in and with Minnesota.

Defendant responds that his contacts with Minnesota are not sufficient to satisfy this element of the standard for exerting personal jurisdiction. With regard to the patent claim, Defendant states that the only relevant contact is the patent letter he sent to Plaintiff. This letter alone, Defendant contends, does not suggest that Defendant was purposefully availing himself of any benefit or protection of Minnesota law. Defendant accordingly concludes that he lacks any contacts with Minnesota that are related to Plaintiff's patent claims. While Defendant concedes that his activities at the Minnesota trade show are related to the false advertising claim, he maintains that those activities were also too limited and insubstantial to support the Court exerting personal jurisdiction over him.

The Court finds that the present claims are sufficiently related to Defendant's contacts with Minnesota to support personal jurisdiction. Plaintiff's false advertising claim clearly resulted directly from Defendant's behavior at the 2000 trade show. Hence, the claim arose out of Defendant's contact with the state.

With regard to the patent claims, the Court notes that in Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001), the Federal Circuit stressed that the "arise out of or related to" requirement for due process is worded in the disjunctive form in order to signal a move away from a pure "arise out of" standard, and toward a more flexible test. More specifically, the Federal Circuit has understood Supreme Court precedent to indicate that "the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed." Akro, 45 F.3d at 1547.

The Court acknowledges that patent infringement warning letters alone are not a sufficient contact on which to base personal jurisdiction. See e.g. Tol-o-Matic, Inc. v. Proma Produkt-Und Marketing Gesellschaft, 690 F.Supp. 798 (D. Minn. 1987); B&J Mfg. Co. v. Solar Indus., Inc., 483 F.2d 594 (8th Cir. 1973). Therefore, it will not satisfy due process to state that the patent claims relate Defendant's letter to Plaintiff. Nevertheless, Defendant's additional contacts with Minnesota all involved attempts to sell products with the '206 patent, which Defendant claims Plaintiff infringed. A declaratory judgment concerning the validity of the '206 patent and whether Plaintiff is infringing, is clearly related to the activities Defendant has directed at residents of Minnesota. As a result, the Court finds that all the present claims are sufficiently related to Defendant's contacts with Minnesota to support exerting personal jurisdiction over him.

### C. Fair Play and Substantial Justice.

Plaintiff maintains that it is fair to require Defendant to appear in Minnesota to litigate this dispute. Plaintiff states that because Defendant asserted his rights through a warning letter sent to a Minnesota resident, and used the Internet and local retailers to attempt to sell his products, it is reasonable for the Court to exert personal jurisdiction over him. Plaintiff further explains that Minnesota has an interest in providing a forum for a resident such as himself, who claims that an out-of-state patent holder is attempting to restrict him from marketing his products within the state.

Defendant replies that his contacts with Minnesota are so limited that subjecting him to personal jurisdiction in this Court would not comply with notions of fair play and substantial justice. Defendant explains that his contacts with Minnesota are too insignificant to lead him to reasonably anticipate being hailed into this Court.

The Court finds that exerting personal jurisdiction over Defendant does comply with notions of fair play and substantial justice. The Federal Circuit has explained generally, that if the first two elements of the personal jurisdiction standard are satisfied, exerting personal jurisdiction is only improper, in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan, 21 F.3d at 1568 citing Burger King, 471 U.S. at 477. The Court finds that Minnesota's interest in adjudicating this dispute is not attenuated at all. All of these claims implicate a Minnesota resident's ability to market his products within Minnesota. Further, Defendant has already come to Minnesota to market his products, and has continued to direct his sales activities at Minnesota

residents. Therefore, the burden on Defendant to now return to Minnesota to litigate these claims does not clearly outweigh Minnesota's interest in adjudicating the dispute. Therefore, the Court should exert personal jurisdiction over Defendant.

SUSAN RICHARD NELSON
United States Magistrate Judge

## RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (Doc. No. 5) be denied.

Dated: October 4, 2001

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by October 14, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.