UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| ROCKET AEROHEAD CORPORATION<br>Plaintiff<br><br>vs.<br><br>VICTOR JAY LIECHTY, II<br>Defendant. | **RESPONSE TO MOTION FOR ATTORNEYS FEES**<br><br>Case No.: 01-333 JNE/JGL<br><br>Judge Joan Ericksen Lancaster<br><br>Magistrate Judge Jonathan Lebedoff |

Defendant, Victor Jay Liechty II, by and through counsel of record, hereby responds to the Plaintiff's Motion for attorneys fees as follows:

DISCUSSION

Plaintiff seeks attorneys fees pursuant to 35 U.S.C. §285. 35 U.S.C. §285 authorizes the award of attorneys fees only for "an exceptional case". Because the statutory power conferred by 35 U.S.C. §285 to award attorneys fees is in derogation of the common law, it is to be strictly construed. CTS Corp. v. Electro Materials Corp. of America, 476 F. Supp. 144 (S.D.N.Y.1979). Thus, an award of attorneys fees should only be made when vexatious and unjustified litigation is clearly shown. Phillips Petroleum Co. v. Esso Standard Oil Co., 91 F. Supp. 215 (D.M.D. 1950). Based on this, courts have ruled that a finding of an exceptional case requires that the party's litigation position was frivolous or baseless. Forest Laboratories, Inc. v. Abbott

SCANNED
FEB 07 2005
U.S. DISTRICT COURT ST. PAUL

Laboratories, 339 F.3d 1324 (Fed. Cir. 2003). The claims asserted by the defendant in this case were not baseless frivolous. Thus, this case does not present facts that fall within the criteria for being an exceptional case. This is illustrated in the discussion below.

1. LIECHTY WAS THE DEFENDANT IN THIS CASE

A significant feature of this case with respect to this motion is that is was Rocket Aerohead who initiated the litigation by suing Liechty. Liechty's claim for patent infringement was brought as a compulsory counterclaim to Rocket's lawsuit. In addition, Liechty's claim for patent infringement was based on an issued patent. An issued Patent is presumed to be valid. 35 U.S.C.§282. Therefore, it is difficult to maintain that Liechty's claim was brought in bad faith.

Furthermore, if anyone has asserted claims in bad faith claims it was Rocket, not Liechty. The genesis of this case is as follows. When Liechty's patent was issued, Liechty's counsel wrote to rocket asking them if they would be interested in licensing it. (Letter from Dana Tangren to Greg Johnson) In response to that letter, Rocket filed suit against Liechty for declaratory judgment and false advertising. Rocket then approached Liechty and offered to drop all claims if Liechty agreed never to sue them again for patent infringement. (Letter from Alfred Edwall to Dana Tangren) Liechty declined this offer and thereafter, Rocket dropped its claim for false advertising anyway. (Plaintiff's Motion to Dismiss Certain Claims Pursuant to Rule 41 previously filed in this case). It is also significant in this regard that in March of 2000, Erich Meredith, Rocket's sales manager, approached Liechty and told him that although they did not

think they could win, Rocket would sue him to tie him up in court and force him to spend $80,000 or more. This was at the Minnesota Deer Classic trade show where Liechty had a display comparing his products to his competitors, including Rocket. (Affidavit of Jay Liechty)

Rocket apparently brought their claim for false advertising only for the purpose of harassment because they did not pursue it very far before dismissing it. Once Rocket discovered that Mr. Liechty's legal fees were being paid by his insurer, they dismissed their claim against him in the hope that he would then be financially unable to pursue his counterclaim against them. Rocket could not have judged their initial claim to have been very meritorious if they were willing to dismiss it as a means of getting rid of Liechty's counterclaim. They never had any intention of pursuing this claim, but only brought it to gain leverage over Liechty to try to get him to drop his claim of patent infringement. Thus, if anyone engaged in frivolous litigation here, it was Rocket, not Liechty and Liechty should therefore entitled to fees spent in defending the false advertising claim.

2. LIECHTY DID NOT MISLEAD THE PATENT OFFICE

Rocket's claim that Liechty misled the patent office is based on several false assertions. First, Rocket did not manufacture broadheads in 1994 pursuant to the '252 patent. The '252 patent did not issue until March 9, 1999. The '252 patent was actually a continuation in part of applications filed in 1994 and 1995. These applications were subsequently abandoned. Therefore, the disclosures contained within all three applications were not publicly disclosed

until the '252 patent issued on March 9, 1999. Thus, Liechty could not have been aware of any of the applications at the time he filed his application in May of 1997.

Second, the "Miniblaster" marketed by Rocket in 1994 did not have cris-cross blades. Rocket knows this because Rocket filed its 3rd application in 1997 claiming cris-cross blades. If the 1994 Miniblaster had had cris-cross blades, that would have constituted an on sale bar to Rocket's patent under 35 U.S.C. §102.

Furthermore, there was no obvious reason that Liechty would have disclosed the earlier patent applications as prior art even had he known about them. The point of novelty of Liechty's patent was a broadhead with angled blades that intersect the centerline of the arrowhead within the body of the arrowhead. Rocket's earlier applications did not teach angled blades that intersected centerline of the arrowhead within the body of the arrowhead. The specification discloses blades that do not cross the center line and if fact, teaches away from this concept by specifically referring to blades that do not cross the center line. Although the court held that Figure 10 discloses such a configuration, Figure 10 is the only place in the entire application where this configuration is disclosed. Under these circumstances, it is understandable that Mr. Liechty would not read the previous applications as teaching angled blades that cross the center axis within the body of the arrowhead.

Furthermore, it is apparent that Rocket itself was unaware of the import of figure 10 because, in 1997, more than a year after the disclosure of Figure 10 was made, Rocket filed for patent protection on an arrowhead with an inclined blade that crossed the centerline within the

arrowhead body. This application was filed as a continuation in part application. A continuation in part application is used to introduce new matter that was not included in the original patent application. A comparison of the original application and the continuation in part application reveals that the only significant new matter consisted of blades that intersected the center axis within the body of the arrowhead.

Had rocket realized that drawing 10 illustrated this concept , they would presumably filed the new application as a divisional application so that they could claim priority back to the original application. This would have resulted Rocket's obtaining priority to this invention. The fact that they did not do this demonstrates that they did not realize what the drawing illustrated. (It should be noted that Rocket cannot file for patent protection on the idea now because they are now on record as claiming that they were marketing this invention in 1994).

3. THERE WAS NEITHER OVERWHELMING EVIDENCE NOR A FINDING BY THE COURT THAT ROCKET MARKETED A PRODUCT THAT WOULD ACT AS AN ON SALE BAR FOR LIECHTY'S PATENT

The evidence of when Rocket began selling an arrowhead whose blade crosses the center axis was very much in dispute in this case. In his response to the Plaintiff's Motion for Summary Judgment, Liechty cited numerous facts, including advertisements and the observations and recollections of broadhead collectors that Rocket did not advertise or sell a mechanical broadhead whose blade crossed the center axis within the length of the arrowhead

body before Liechty filed his patent application. Furthermore, as stated in part 2, had Rocket actually been marketing arrowheads whose blades crossed the center axis in 1994, that fact would have barred Rocket's 1997 continuation in part application. Had Rocket, in fact, been selling such a product in 1994, it would have committed fraud on the patent office when it filed the 1997 application without disclosing that it had been marketing the claimed invention for at least three years prior to the application.

4. Liechty's Deposition

With respect to Liechty's failure to appear at his deposition, this was already dealt with by the court under rule 37 of the Federal Rules of Civil Procedure.

## CONCLUSION

Based on the foregoing, it is clear that this is not an exceptional case of the type

contemplated by 35 U.S.C. §285. Thus, an award of attorneys fees is not appropriate in this case.

DATED this 5 day of February, 2005.

POWELL & LANG

Wesley M. Lang
50 South Main, #850
Salt Lake City, Utah
84144
(801) 531-7080

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2005, I caused to be served by facsimile and United States mail true and accurate copies of the following copies of the following documents:

1. Response to Motion for Attorneys fees; and,

2. Affidavits and exhibits.

Upon:

Aldo J. Terrazas
701 4th Avenue, South, Suite 500
Minneapolis, MN
55415

POWELL & LANG, LC
50 South Main Street, Suite 850
Salt Lake City, Utah
84144

February 5, 2005

RECEIVED
BY MAIL

FEB 07 2005

CLERK, US DIST. COURT
ST. PAUL, MN

Court Administrator
Warren E. Burger Federal Building
316 North Robert Street
St. Paul, MN
55101

Re: Rocket Aerohead Corp. v. Victor Jay Liechty II
Court File No: 01-333 JNE/JGL

Dear Sir/Madam:

Enclosed herewith for filing please find the original and two copies of the following documents in the above referenced matter:

1. Response to Motion for Attorney Fees; and

2. Affidavits and Exhibits.

Very Truly Yours,

Wesley M. Lang

cc: Aldo Terazas

Ph (801) 531-7080 Fax (801) 355-9705